Good morning, Your Honors. May it please the Court, Blythe Chandler on behalf of Appellants, I'd like to reserve five minutes for rebuttal. All right. I'll try to help you watch your clock. Do my best. More than 2,000 members of the Whistler Vacation Clubs paid regular dues in order to use vacation timeshare properties at Whistler. Instead of using the dues to maintain the timeshares, the Directors used the money to repay the loans to one of their own, Director Saldat. And when Saldat's company failed to repay the loans, the Directors misrepresented their own roles in the loan transactions and required the timeshare members to pay additional fees in order to continue using their timeshares. The District Court should not have dismissed the timeshare owner's complaint at the pleading stage. We pled fact, supporting both the public interest impact and trader commerce elements of our Washington Consumer Protection Act claims. And I'd like to start with public interest impact. The Court's analysis should begin with the plain language of the statute. And the revised Code of Washington, Section 19.86.093, says that public interest impact is satisfied when the unfair or deceptive conduct injured other persons. We allege that 2,000 other people were injured because they had to pay money to continue using a timeshare they'd already paid for. And that should be the end of the analysis, particularly at the pleading stage. The allegation of the 2,000 additional people has to be accepted as true. And the statute really is unambiguous. Were other people injured? The answer is yes. The District Court disagreed with that analysis, finding that members of a private club, like these timeshares, could not be sort of counted as members of the public. And we disagreed with that for a couple of reasons. First, such a rule would carve a huge hole in Washington's Consumer Protection Act. There are numerous businesses that organize themselves as private clubs. Costco is a great example. Is it the case that when someone buys a Costco membership, they can no longer challenge Costco for any of its billing practices directed towards them because they're members of a private club under the Consumer Protection Act? It clearly isn't. And the District Court found that it was necessary to turn to the multi-factor tests first announced in the Washington Supreme Court's decision in Hangman Ridge. Those tests were, first of all, announced before the statutory provision we rely on, 19.86.093, was adopted. And second, you know, the ultimate purpose of those tests has always been to tell the court, when presented with an individual plaintiff making a claim against an individual defendant, whether there was a likelihood that other people might have been injured too. The Washington Supreme Court tells you that that's exactly the purpose of these tests. And so when the ultimate question the tests are intended to answer is answered by the fact that there are 2,000 other people injured, there's really no need to resort to them. I guess I'll go back to the old Washington case on Hangman Ridge, which everyone's familiar with and has briefed quite well here. But simply because there's a lot of people involved doesn't really answer whether you have a consumer problem or whether you have some kind of internal governance problem. And it would help me if you would point where in your complaint you think you've alleged something beyond numerosity as opposed to what would be normally characterized as an internal homeowner's dispute. So a couple of things I would say in response. What I would point to in our complaint is paragraph 1.2, which alleges the additional people who were injured. Because I do think that that is sort of the key fact for determining whether public interest impact is satisfied here. Looking at Hangman Ridge, in the test for consumer transactions, the fifth factor is in the course of a single transaction were other people injured. And that's exactly what we have here. In the course of a single transaction, other people were injured. There is, I'm aware of no authority for the notion that because there is a private club business structure at issue, the members of those private clubs can no longer be considered members of the public who were impacted. And I would also suggest that the Washington legislature's decision to make the business of timeshares a business practice that's carefully regulated, and in fact violations related to sales of timeshare interests can give rise to a per se CPA claim, reflects a concern in the legislature with the ways in which these businesses are operated. And it's, I would say, always going to be the case that when someone is injured by the practices of a timeshare business, they probably are members of the timeshare. Does your complaint allege intentional misconduct? We do allege, we allege misrepresentations. We don't have, I don't The answer to my question is no. I think the answer is no. How about a knowing violation of the law? We allege that the directors acted unreasonably in making loans, taking money that was essentially entrusted to them as payment for using a timeshare property. Are we at a no again? Intentional misconduct, I think we are at a no. And a knowing violation of the law? A knowing violation of the law. I don't think we have an allegation of knowing violation of the law. We do have an allegation that the loans themselves were violations of the bylaws of one of the two entities and of the law. How about the existence of a transaction where the defendants received benefits they were not legally entitled to? Does your complaint allege that? We allege that defendant Saldat is responsible for at least $50,000 that is missing from the accounts of these entities. We don't have factual information about exactly the process by which that occurred. The case was dismissed at the pleading stage. I'd like to turn to the trader commerce requirement unless the court has further questions related to public interest impact. Did you ask for an opportunity to amend? We did ask for an opportunity to amend and I think the governing pleading is our first amended complaint which begins at ER 31. The original complaint begins at ER 159. The main difference I would say is there are more allegations about the unreasonableness of the defendant's conduct in making these loans and in misrepresenting their roles when they demanded that the timeshare owners pay additional fees in order to continue using the properties they'd already paid for. The trader commerce element, again, I think the court's analysis should begin with the plain language of the statute. Trader commerce is defined as including the sale of assets or services and any commerce directly or indirectly affecting the people of the state of Washington. And what we have here is an ongoing business relationship between the members of this timeshare who paid their regular dues in exchange for the ability to essentially use a service which was the timeshares themselves. The directors were acting in the course of that business when they took the money paid for maintenance of the timeshares and administration of the business and used it to make a loan to an insider over a million dollars in loans. And were also acting in trader commerce when they sent misleading communications to the timeshare members about their roles in making the loans and said, hey, as a result of this, you've got to pay a bunch of extra money if you want to keep using these timeshares. I have the first amendment complaint open. What's the strongest statement you've got that there was a misrepresentation about their roles in the underlying transaction, please? Yes, 4.23. I would say all of the allegations in 4.23 and 4.24. There are specific allegations of failures to disclose. For example, 4.241 failed to disclose that they had authorized, approved or ratified the loans. 4.242 failed to disclose that when they authorized them they knew Saldat was the owner of the West Coast Timeshares, the other business. Failed to disclose that they knew he had a conflict of interest when they authorized the loans is 4.23. 4.24.3, excuse me. But I think all of the allegations under 4.24 go to that point. Failed to disclose that they had not registered the security interest. That's the end of it then? Continuing through 4.2411. Thank you, got it. Yes. The district court's rejection of our trader commerce arguments was focused heavily on a rule that has always been used or almost exclusively by the Washington courts to determine essentially whether or not a learned professional can be sued under the CPA for what looks like a malpractice action. And that is just not the rule that should be applied to corporate directors for numerous reasons. First, they're not lawyers, they're not doctors, they're not accountants. There's no authority suggesting that this rule goes beyond them. And in fact, in the Edmonds versus John L. Scott case, the Washington Court of Appeals specifically addressed an argument that a realty company could be protected by this rule and rejected that argument saying, you know, what that realty company was doing when it took the plaintiff's earnest money and dispersed it to itself and the seller, after the plaintiff backed out of a deal where she was going to buy some property, was not the type of judgment that we think of lawyers using when they represent their clients. And so how do you determine what's entrepreneurial and what's sort of the professional judgment of a director of a board is just a question that really is not helpful in answering whether trader commerce was going on here. I'd like to reserve the rest of my time for rebuttal unless the court has additional questions. Thank you. May it please the Court, Vasu Danki and David Greenberg, on behalf of the moving appellees. My clients are current and former volunteer board members of two private nonprofit corporations. They're alleged to have made some loans to another company, and that company is one in which my clients have no ownership or interest.  My clients exercised their rights as directors of these clubs to impose special assessments on the private club members. The members voted on the special assessments, and then several years later the lawsuit followed. The CPA is not as broad as the appellants interpret it. For the facts of this case, as noted by Judge Zille, it's a square peg in a round hole. Just because a CPA has been broadened recently in certain respects does not mean that it invades the private transactions of a corporation, particularly in the set of facts and allegations in the amended complaint. We are not aware of any authority, Your Honors, that the CPA applies to a volunteer board member making decisions for a private club in which it affects only those members of the club and not the public at large. The CPA is an outward-looking statute. Counsel, what's your answer to, or what's your response to opposing counsel's argument or analogy to Costco? Your Honor, respectfully, I don't think that is an apples-to-apples comparison. Just to say that just because Costco has members that we are arguing that they can never bring a CPA claim, that is not what we're saying. We're saying that if the alleged conduct is one that is in trade or commerce and affects the public interest as those prongs have been analyzed by case law, then it is possible that Costco board could be in violation of the CPA. But if you look at the specific allegations here, it's not the fact that you're members of a club or a corporation that prevents a CPA action. It's the alleged conduct, and that is really what the analysis is. What is the alleged conduct of, in my case, my clients, the former and current board members of these corporations? If Costco management perhaps tried to buy part of Sam's Club or assets of Sam's Club and it didn't work out, is that a CPA violation without anything more? No, it is not. None of the prongs have been met here, and there has been no deceptive act of practice. These were in position of a special assessment that was voted on by the membership. This is not in trade or commerce. The fact that my clients aren't doctors or lawyers and that they exercise their management decision does not prevent them from carving out that exception to entrepreneurial conduct. They're not entrepreneurs. What appellants are essentially arguing as to that prong is that doctors and lawyers and accountants can assert an exception to the entrepreneurial aspect of trade or commerce, but my clients cannot, who are volunteer board members. So that analysis from appellant's viewpoint fails because my clients were involved in business judgment decisions and not entrepreneurial conduct. No allegations of false advertising. No allegations of inducing the public to buy into the timeshares. It was an investment opportunity that went bad. They issued a special assessment, and based on those damages of paying the special assessment, the only claim that appellants had left was the Consumer Protection Act. I'm interested in your view on the Washington, the nonprofit, I guess I'll call it nonprofit immunity is the best way to phrase it, under 2606035, and what your position is on that statute and where these transactions fit in. Your Honor, my client's transactions fit squarely within 24.06.035. That, as you know, RCW 24 is part of the Nonprofit Act. These are nonprofit corporations. The standards for nonprofit board members, and legislature did this for a particular reason, because they are nonprofits, and you have a lot of regular people like my clients joining these boards. The standard for liability requires intentional misconduct or knowing violation of the law. Those are not alleged here, and that was fleshed out in district court, as well as Judge Hawkins just asking those questions a few minutes ago. It requires liability when there is a personal receipt of benefits. That is also not alleged here. My clients did exactly what would be considered immunity under RCW 24.06.035. Do we have a question in cases which intersect that statute with the Consumer Protection Act? This goes back to my general statement in my opening, is that we are not aware of any cases which have ruled that nonprofit board members of a corporation are liable under the CPA or are even actionable under the CPA. That doesn't mean that some exception or some circumstance does not exist ever. We certainly are not saying that. But we are not aware of any case law, but quite frankly the absence of case law against nonprofit board members is very telling. Thank you. I see that. No, I still have time. Okay. No, you don't have time. Oh, I don't have time. Are you having your colleague argue as well? Yes, I am. Then I don't have time. Then you probably want to conclude, assuming you have concluded. The district court's decision should be affirmed. Thank you. Thank you, Your Honors, for hearing this today. May it please the Court. My name is Tim Lawler, and I represent Payman Marani, Marilyn Cartwright, and John Soldat, at least two of the three of whom are Canadian citizens. I want to first address a question that the Court posed about whether the Costco analogy fits this case. It does not. Number one, Costco is for profit. Number two, as we all know, that Costco makes its money off of its dues. If the Costco board invested some of its monies in an ill-gotten loan that didn't pan out, such as in this case where only 90 percent of the money was repaid, and the board decided to raise dues as a result of that to cover that shortfall, would that incur CPA liability? The answer to that question is no. I think this case was very well, very properly decided by Judge Zille, because Judge Zille focused in on trade and commerce, and there's three bases for why trade and commerce is not established. Costco is a public company in any event, isn't it? Yes, it is. It is a for-profit public company. Thank you, Your Honor. Which changes its whole status in terms of securities regulation as well. It does. And there's a reason, and I'd like to touch on the reason, why there is a specific business judgment rule exception for non-profit board members. The business judgment rule in this case I think is established three different places. There's one statute that the appellants did not address in their briefing, at least not directly, and I think it's the most important statute in the whole CPA, and that's RCW 1986-920, which is often miscited for the proposition liberal construction. It does say liberal construction. It says liberal construction to enunciate and to propagate the goals of this statute to mirror federal antitrust, anti-competitive laws, the difference being the state of Washington has found fit to give a private cause of action to people to enforce antitrust provisions. But it's the next sentence in RCW 1986-920 that is completely ignored by the appellants. It says, in following this liberal construction, you shall not, that's the language in the statute, you shall not interfere with normal business activities, enterprises, operations. You shall not. That is a strong legislative intent that the normal day-in, day-out business decisions shall not be impacted by the CPA, and historically they have not been. This interpretation of the statute posited by appellants would massively expand the application of the CPA. Literally every class action would have a CPA claim. Your argument is that the loans that form the basis for the complaint, that are being complained about, is no different than if the board had acquired another property for its members to visit from time to time and that entity went bankrupt, went into a chapter proceeding. There would be business judgment involved in that, and this would be perfectly normal, correct? That's correct, Your Honor. We don't have a sale here, and I won't go into all the entrepreneurial factors, but the other prong of the business judgment... But these loans involved, didn't some of the directors have an interest in the entities or a relationship to the entities that were loaned money? The allegations in the complaint say that one of the directors, Mr. Soldat, had an ownership interest in the entity that received the loan. It also alleged...  That's... Excuse me? Judge Hawkins asked you the question, and you seem to indicate that that is a disputed fact. It's not for purposes of today's argument, is it? No, they've alleged it in the complaint. There's no question about it. Well, if you have a self-dealing director, albeit in a non-profit status, would you agree that you would look at it differently? It could take you outside of the protections of the statute, but they also allege in their complaint that the other directors affirmed that conflict and knew about that conflict. Knew about it in advance. Yes, and there's a statutory exception for that. When it is out in the open like that and affirmed by the other directors, it's not a conflict. The third prong... About it at the time of the initial loan as opposed to at the time that they went back to the membership, right? Correct. And just one last two points, Your Honor. I know I'm going to be running out of time. The third prong that takes away their arguments on the business judgment rule is a case law that has been developed, which is real simple. When you're not exercising your entrepreneurial aspects of a business, and here we have a non-profit director making a judgment call, plaintiff's own complaint on numerous paragraphs, 4.10, 4.11, 4.12, everything they talk about is about negligence. Even in their opening brief in this case on page one, again, what are they talking about? A risky loan. It was a risky loan. The cases we've cited, both parties have cited, that apply to realtors, appraisers, doctors, dentists, when you're exercising your skill, and that's the word they use in their complaint, and they use it in their brief, when you're exercising your judgment and your skill, and you make a decision that turns out to not pan out, you're not liable. Ask ourselves this. If the loan had been repaid, 100% versus about 80%, if the loan had been repaid, would there be a CPA cause of action here? Answer, no. Why? Because there would be no damages. Now, appellants have tried to say it's really not about the loan, it's not about whether the loan was repaid, it's about that they weren't very careful in making the loan, and then when it came time to ask the members to make up the deficit because of the poor loan, they didn't tell them every detail about the making of the loan. They just said, we have a shortfall, and they asked the members to vote. Do you choose to assess yourself? They chose to assess themselves. Mr. Donkey put it well. Judge Zille put it well. This is square peg. It doesn't fit a round hole. There's no federal antitrust, anticompetitive laws that are anywhere near this claim. Judge Zille cited, too, the case, I believe it was Lightfoot versus McDonald, which says if you're going to come to the court and you're going to ask us to create a new CPA claim that in 50 years and hundreds of reported decisions has never once seen the light of day, if you're going to ask us to do that, you show me how it mirrors a federal claim that the Federal Trade Commission has identified. It doesn't. And look at the language in that case and language in 920. Is there any fact, any fact in the entire complaint that talks about anticompetitive, talks about collusion, talks about a monopoly? We're so far afield from that, we're never going to get there. This claim, they had causes of action they could have brought. They're trying to morph a complaint into bringing a CPA claim. It's not there. There's no trade and commerce. There's no public interest. And even if there were, we have a specific codified statutory exception for nonprofit directors that applies foursquare. Thank you, Your Honor. Thank you. You have some rebuttal time. Your Honors, I'd like to begin by addressing the general notion that something that doesn't look like a CPA claim can't be a CPA claim. The Washington Supreme Court does not follow that type of reasoning. In the Panag case, the court forcefully rejected the notion that there has to be some sort of specialized relationship between the parties in order to have a CPA claim. What the court said is, look at the five elements and tell us whether they're satisfied. And we have alleged facts that meet each of the five elements, which is why dismissal at the pleading stage was improper. With respect to RCW 19.86.920, the language of the statute is that the act shall not be construed to prohibit acts or practices which are reasonable in the relation to the development and preservation of business or which are not injurious to the public interest. The defendants may disagree with us about the reasonableness of their conduct, but our allegations are that they acted unreasonably when they took people's money that people paid in order to use a timeshare and invested it in risky, unsecured loans primarily to one of their own, essentially. And then misrepresented their role in doing that when they came back to the clients, to the members of the timeshare and said, pay us more money if you want to keep using your timeshares. The nonprofit status of the entity does not matter. Washington actually makes it a per se violation of the CPA to violate the law governing charitable solicitations, for example. The Holiday Resort case that we've cited involved a defendant that was a nonprofit. It was an entity that was a conglomeration of mobile home park owners. But that was a knowing violation of the law, which popped it out of the exemption. What's the knowing violation of the law alleged here? Well, with respect to why is the corporate nonprofit business judgment statute not applicable? I'm asking, what is the knowing violation of the law that is alleged or failed to be alleged in this complaint? So I think I would dispute that RCW 24.06.035 is the- You're not hearing my question. My question is, what is the knowing violation of the law that is alleged in the complaint? Is there one and what do I- There isn't a knowing violation of the law alleged. But I think that whether there was a knowing violation of the law only matters if RCW 24.06.035 applies. And it doesn't for a couple of reasons. There isn't a case saying that the business judgment rule is a defense to a Washington CPA action. And, in fact, the CPA has its own standard that tells you whether an individual can be liable under the statute. The Washington Supreme Court just reaffirmed that standard in State v. Arlene's Flowers. The standard is, did the person participate in an unfair or deceptive act or, with knowledge of the unfair or deceptive act, approve of it? And that standard is not consistent with the business judgment immunity that the defendants rely on here. I see my time is up. Unless the court has further questions, we'd ask that the court reverse the dismissal. Thank you. Thank you. Thank all counsel for your argument this morning. The case of Stiegler v. Soldat is submitted and we're adjourned for the morning. All rise.
judges: Hawkins, McKeown, Christen